UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL CASE NO. 15-298-WOB-CJS

PATTY JANE DONALDSON                                           PLAINTIFF


v.                        REPORT AND RECOMMENDATION


CAROLYN W. COLVIN, Acting
Commissioner of Social Security                              DEFENDANT

* * * * * * * * * * * *

Plaintiff Patty Jane Donaldson brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under Title II of the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  After a thorough review of the administrative record, for the reasons explained herein, it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 12) be **denied,** and the Commissioner's Motion for Summary Judgment (R. 13) be **granted**.

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  The findings of the Commissioner are not

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Id.* (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id.* at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id.* at 804 (citing 20 C.F.R. § 404.1520(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least 12 months, and the impairment

or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is presumed disabled regardless of age, education, or work experience. *Id.* (citing 20 C.F.R. § 404.1520(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id.* Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Patty Jane Donaldson was 48 years old at the time of the Commissioner's decision, and 45 years old at the March 2011 alleged disability onset date. (R. 12-1, at 1). Plaintiff has a high school education and has previous work experience as a home attendant and cashier/checker. (Administrative Record (A.R.) 26). Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Robert B. Bowling on January 2, 2014. (*Id.* at 35-69). The ALJ also heard testimony from an impartial vocational expert (VE). (*Id.* at 64-69). After receiving testimony and reviewing the record, the ALJ issued a written decision on March 26, 2014, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 18-28).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.* at 20-28). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2011. (*Id.* at 20). At step two, the ALJ determined

3

that Plaintiff had the severe impairments of "disorders of the spine, anxiety disorders and affective disorders" under 20 C.F.R. § 404.1520(c). (*Id.*).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listings of Impairments under the applicable Federal Regulation. (*Id.* at 20-21). At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b). Specifically,

> "...[Plaintiff] can stand, walk and sit for a total of six hours in an eight-hour workday; she can never climb ladders, ropes and scaffolds; the claimant can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl and occasionally reach overhead, bilaterally; further, the claimant is limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, with few, if any, workplace changes; and the claimant should have only occasional interaction with the general public, co-workers and supervisors.

(*Id.* at 22).

At the hearing, the ALJ heard testimony from an impartial VE who stated that based on the RFC provided by the ALJ, Plaintiff could not perform any of her past relevant work. (*Id.* at 26). At step five, the ALJ adopted the VE's opinion that, given an individual of Plaintiff's age, education, work experience, and stated RFC, there are other jobs in the national economy that such an individual would be able to perform, namely representative occupations such as light commercial cleaner, clerical general, order caller, routing clerk, or mailroom clerk. (*Id.* at 26-27). Accordingly, based on this testimony, the ALJ determined Plaintiff was not "disabled" for social security purposes. (*Id.* at 28).

4

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and on August 20, 2015, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-3). On October 6, 2015, having exhausted her administrative remedies, Plaintiff timely filed her Complaint asserting the ALJ's decision was contrary to law. (R. 1).

Plaintiff filed a Motion for Summary Judgment on February 12, 2016. (R. 12).  The Commissioner filed her responsive Motion for Summary Judgment on March 11, 2016. (R. 13). These Motions have been referred for consideration pursuant to 28 U.S.C. § 636(b)(1)(B).

## III.    ANALYSIS

Plaintiff's Motion for Summary Judgment alleges the ALJ erred in determining Plaintiff was not disabled as defined by the Social Security Act.  (R. 12-1, at 1-2).  Specifically, Plaintiff claims "the ALJ failed to comply with the relevant law in assigning weight to the treating physician findings, opinions and RFC." (*Id.* at 1).  For the reasons outlined below, Plaintiff's sole contention of error is without merit, and the ALJ's opinion should accordingly be affirmed.

Although the ALJ is tasked with making the ultimate determination in any disability application, he is obligated to consider the evidence provided by medical personnel who have treated or examined a claimant. 20 C.F.R. § 404.1537(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  Doctors who have actually treated (as opposed to merely examined) a claimant are especially valuable in helping the ALJ make a disability determination. "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2)).  However, treating physicians' opinions do not automatically bind the ALJ:  these opinions are only entitled to controlling weight when they are

supported by objective medical evidence and consistent with other substantial evidence in the record, *Wilson*, 378 F.3d at 544, and not contradicted by substantial evidence to the contrary. *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990); *see also* C.F.R. § 404.1527(d)(2).

If the opinions of treating providers do not deserve controlling weight, the ALJ must determine what weight to give them by considering the following factors: the length, nature, and extent of the treatment relationship; the supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization. *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 380 (6th Cir. 2015) (citing *Wilson*, 378 F.3d at 544). If the ALJ finds the treating physician's opinion fails to meet these conditions, he may discredit that opinion, so long as he gives good reasons for doing so. 20 C.F.R. § 404.1527(d)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439-40 (6th Cir. 2010).

In determining what weight to give the opinion of a non-treating physician, the ALJ must apply the same factors considered for treating physicians' opinions, i.e., the opinion's supportability and consistency, and the physician's specialization. *See Steagall*, 2015 WL 64654, at *3 (citing *Gayheart*, 710 F.3d at 379). "The ALJ cannot apply greater scrutiny to the opinions of treating sources over those of non-treating sources." *Id.* However, the "good reasons" requirement does not apply to a non-treating source. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

6

One of the treating physicians in this case was Dr. M. Mazloomdoost, a pain management specialist. Plaintiff began seeing Dr. Mazloomdoost in October 2012 afer she was in a car accident. (A.R. 369). Plaintiff visited Dr. Mazloomdoost's office both for pain management (which Dr. M. Mazloomdoost handled) and for psychiatric treatment from another doctor in the office, identified in the records as "C. Shirazi" but who Plaintiff's Motion for Summary Judgment alternatively identifies as "Dr. C. S. Mazloomdoost." (R. 12-1, at 3 n.1). Plaintiff continued to visit Dr. Mazloomdoost's office for pain management or psychiatric treatment approximately once a month from October 2012 through the ALJ's March 2014 decision. (A.R. 364-72, 384-85, 388-89, 393-94, 403-06, 426-31). On February 12, 2013, Dr. M. Mazloomdoost completed an "RFC questionnaire" stating his opinions regarding Plaintiff's physical work limitations. He noted therein that Plaintiff's impairments of low back pain and tenderness, sciatica, and disc bulges resulted in back pain with reduced range of motion, joint pain, swelling, numbness, and positive straight leg tests, as well as anxiety and depression. (*Id.* at 343-49). Dr. M. Mazloomdoost's report went on to state that Plaintiff could sit for one hour at a time and two hours total in an eight-hour workday; would need to lie down during the workday; could lift up to 10 pounds infrequently; had a limited ability to use her right hand for fine manipulation; could bend and twist infrequently; and would miss between 2 and 15 days of work per month. (*Id.*). The report also opined on how Plaintiff's psychological issues would impact her RFC, stating that Plaintiff suffered a "marked limitation" in the ability to deal with normal stresses of competitive employment. (*Id.* at 345).

The ALJ's opinion indicates that Dr. M. Mazloomdoost's opinion was considered when the ALJ determined Plaintiff's RFC, but that it was given little weight as inconsistent with the overall medical evidence.

> The undersigned notes that there is little objective evidence of record to support Dr. Mazloomdoost's findings, therefore it is given little weight. It appears he based his opinion on an MRI, which was actually a three-view x-ray that showed only mild multilevel facet arthropathy and no other objective medical evidence. Further, Dr. Mazloomdoost reported the claimant had "marked" limits in her ability to deal with normal work stresses such as working at a constant pace, working appropriately with co-workers and supervisors and not taking an excessive number of breaks. The undersigned finds these limitations are inconsistent with the weight of the medical evidence of record and based solely on the reported symptoms of the claimant. Further, the undersigned notes that Dr. Mazloomdoost is a Pain Management Specialist, not a psychiatrist. The undersigned has considered the treatment notes of record from C. Shirazi, M.D., psychiatrist, however, there is no mental evaluation of record from Dr. Shirazi.

(*Id.* at 25).

Plaintiff's sole argument in her Motion for Summary Judgment is that the ALJ's assignment of little weight to Dr. M. Mazloomdoost's opinion was in error. Plaintiff argues the ALJ's assertion that Dr. M. Mazloomdoost's opinion was not supported by the objective record was incorrect, and that the ALJ made several factual errors in analyzing Dr. M. Mazloomdoost's opinion. (R. 12-1, at 4).

The Motion identifies three errors Plaintiff maintains were made in the ALJ's analysis of Dr. M. Mazloomdoost's findings. First, that the ALJ incorrectly stated Dr. M. Mazloomdoost's opinion was not based upon MRI testing. (*Id.* at 4). Plaintiff points out that Dr. M. Mazloomdoost did in fact review an MRI when writing his report; that the MRI of the lumbar spine was conducted in January 2011 on the orders of Dr. Eric Bradburn, a previous treating physician; and that the ALJ's decision incorrectly classifies this examination as a "three-view x-ray." (*Id.*). Second, Plaintiff argues that in referring to the MRI (which the ALJ erroneously labeled a three-way x-ray), the ALJ states it "showed mild 'arthropathy.'" (*Id.* at 5). Plaintiff points out that the MRI actually shows "facet hypertrophy" and disc bulges at L3-4, L4-5, and L5-S1. (*Id.*). Third, Plaintiff argues the

8

ALJ's assignment of little weight to Dr. M. Mazloomdoost's RFC Questionnaire's notation of "marked limitation" in the ability to deal with normal stresses of competitive employment (such as working at a constant pace, working with coworkers and supervisors, etc.) was error. Plaintiff points out Dr. M. Mazloomdoost utilized the notes of a psychiatrist in his office when he filled out the RFC Questionnaire.

The Commissioner's Motion for Summary Judgment acknowledges that the ALJ's characterization of the January 2011 MRI as an x-ray was in error. (R. 13, at 7). However, the Commissioner maintains

> this error was harmless given the ALJ's underlying point—that the image showed only mild changes—is borne out by the MRI. Indeed, the radiologist's "impression" of the lumbar spine MRI was "mild degenerative changes" in three areas of Plaintiff's lumbar spine [(A.R. 350)]. This is exactly what the ALJ noted after considering the MRI [(A.R. 25)]. Thus, the ALJ's misstatement as to whether this image was an MRI or an x-ray was irrelevant given that the ALJ adequately interpreted the image's mild findings.

(*Id.* at 7-8 (Administrative Record citations changed to the Court's format)).

The Sixth Circuit has recognized that an ALJ's finding as to disability may withstand scrutiny from a reviewing court despite errors in the decision if substantial evidence supports the ALJ's decision and the decision would have been the same regardless of the errors. *See Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012) (factual error in credibility determination was harmless); *Despins v. Comm'r of Soc. Sec.,* 257 F. App'x 923, 931 (6th Cir. 2007) (error in ALJ's interpretation of testimony considered harmless); *Campbell v. Comm'r of Soc. Sec.,* 2007 WL 1063163, at *1 (6th Cir. 2007) (error of ALJ in not considering all of plaintiff's ailments in combination was minor and not substantial enough to change the outcome of the case). The question

for this Court, then, is whether the ALJ's errors in his interpretation of the MRI were in fact "harmless" in the wider context of the Administrative Record as a whole.

After a thorough review of the ALJ's opinion and the complete medical record, the Court finds that the ALJ's factual errors in reference to the x-ray were harmless in that they would not have changed the overall conclusion that Plaintiff is not disabled or that there is substantial evidence supporting that conclusion. The ALJ's description of an MRI as a three-view x-ray is incorrect, as Commissioner concedes. (R. 13, at 7). It was also error for the ALJ to write that the MRI "showed only mild multilevel facet arthropathy" (A.R. 25) when the MRI actually noted multilevel facet hypertrophy rather than arthropathy (*id.* at 350). However, the ALJ correctly noted that the radiologist's overall impression of the various findings noted for each level was that of "mild degenerative changes as above [referring to the reported changes at L3-4, L4-5, L5-S1] (*Id.*). Thus, despite Dr. M. Mazloomdoost's notation on the MRI report that Plaintiff's facet hypertrophy was confirmed by Plaintiff's tenderness on exam at L5-S1 and L4-5, left side more than right side (*id.*), the ALJ did not agree that this was sufficient objective evidence to support the significant degree of physical limitations noted by Dr. M. Mazloomdoost in his RFC Questionnaire. (*Id.* at 25, 343-49).

Furthermore, subsequent tests conducted after the MRI upon which Dr. M. Mazloomdoost's opinion regarding Plaintiff's work capability relied lend support to the ALJ's conclusion that Plaintiff is capable of performing light work. These include a cervical spine x-ray taken July 14, 2011, showing normal results (*id.* at 311), a lumbar spine x-ray taken December 2011 that showed "mild multilevel facet arthropathy" with "no acute fracture or malalignment" (*id.* at 362), and an October 26, 2012, cervical spine CT scan showing normal results (*id.* at 354). Moreover, Dr. M. Mazloomdoost's marked limitations are contradicted by that of the reviewing state physician, Dr.

10

Lisa Beihn, who, based on her review of the record, opined that Plaintiff could perform medium work. (*Id.* at 83-95). The ALJ discounted Dr. M. Mazloomdoost's marked limitations given the mild objective findings but found Plaintiff was more limited than Dr. Beihn opined. (*Id.* at 23, 24). In light of the fully body of evidence considered by the ALJ, the Court finds that there was substantial evidence to support his decision as to Plaintiff's physical RFC.

Plaintiff's Motion for Summary Judgment also alleges that the ALJ erred in giving little weight to Dr. M. Mazloomdoost's findings regarding how Plaintiff's psychological ailments would impact her ability to work. In his RFC Questionnaire, Dr. M. Mazloomdoost indicated that Plaintiff was affected by depression and anxiety, and stated that she suffered from a marked limitation in her ability to deal with normal stresses of competitive employment (such as working at a constant pace, working with coworkers and supervisors, etc.). (*Id.* at 345). The ALJ's opinion gave little weight to these findings, stating:

> the undersigned notes that Dr. Mazloomdoost is a Pain Management Specialist, not a psychiatrist. The undersigned has considered the treatment notes of record from C. Shirazi, M.D., psychiatrist, however, there is no mental evaluation of record from Dr. Shirazi.

(*Id.* at 25).

Plaintiff's Motion argues that the ALJ erred in his dismissal of Dr. M. Mazloomdoost's findings regarding Plaintiff's mental health because Dr. M. Mazloomdoost relied on the findings of Dr. C. S. Mazloomdoost, who is a licensed psychiatrist.

> The ALJ erroneously concluded that Dr. M. D. Mazloomdoost should not have relied upon psychiatric findings as a basis for his RFC findings. The ALJ was seriously and materially in error. Dr. M. D. Mazloomdoost was correct in including psychiatric findings as a basis for his RFC because Dr. M. D. Mazloomdoost employs Dr. C. S. Mazloomdoost in his office. C. S. Mazloomdoost MD is a board certified psychiatrist who performed numerous psychiatric evaluations of the

11

claimant. . . . Dr. M. D. Mazloomdoost had a medical basis for relying on the findings of the psychiatrist who works in his office. . . .

The ALJ committed reversible error in ruling that Dr. [M.] Mazloomdoost should not have based his opinions on psychiatric diagnoses of "C. Shirazi, MD psychiatrist." The ALJ failed to understand that "C. Shirazi, MD psychiatrist" is Dr. C. S. Mazloomdoost, who performs psychiatric evaluations in Dr. M. D. Mazloomdoost's office. The ALJ committed material error when he found that "there is no mental evaluation of record from Dr. Shirazi.

(R. 12-1, at 3 n.1).

The ALJ appropriately considered and applied the psychological evaluations of Dr. C. S. Mazloomdoost when assigning Plaintiff an RFC. He considered the psychiatrist's notes in his formulation of the RFC, along with other mental health evidence of record. (A.R. 25). Dr. M. Mazloomdoost is a physician specializing in pain management and anesthesia, not psychiatry. (R. 12-1, at 3 n.1). While Dr. M. Mazloomdoost did form an opinion on psychiatric issues based on the findings of a psychiatrist, his interpretation of data outside his area of expertise was not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); *see also Wilson*, 378 F.3d at 544.

Had Dr. C. S. Mazloomdoost, the psychiatrist, offered actual opinions on how Plaintiff's mental limitations impacted her work abilities, the ALJ would have been called upon to weigh such opinions from this specialist. But as the ALJ's opinion points out, there is no RFC evaluation from Dr. C. S. Mazloomdoost. Along with Dr. C. S. Mazloomdoost's notes, the ALJ did consider the opinions of an evaluating psychologist, Jennifer Fishkoff, Psy.D. (A.R. 326-31), and state agency reviewing psychologist Mary K. Thompson, Ph.D. (*id.* 87-88), when determining how Plaintiff's mental state influenced her RFC. The ALJ's RFC ultimately reflected some degree of mental

12

limitation for Plaintiff, stating that she could only perform simple and routine tasks and that she should have limited interaction with the general public. (A.R. 22). The ALJ's assignment of little weight to Dr. M. Mazloomdoost's opinion regarding Plaintiff's mental limitations was explained appropriately in the opinion, and the final RFC determination was backed by substantial evidence; therefore, the ALJ's determination on the issue of mental limitations should be affirmed.

Ultimately, the ALJ considered the objective evidence and RFC Questionnaire provided my Dr. M. Mazloomdoost when evaluating Plaintiff's RFC. Based on his review of the complete record, the ALJ determined that Dr. M. Mazloomdoost's opinions regarding Plaintiff's abilities to work were entitled to little weight as they were contrary to the weight of the complete medical record. This determination was supported by substantial evidence, and the ALJ's opinion should accordingly be affirmed.

## IV.    CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed. Accordingly, **IT IS RECOMMENDED** that:

1.    The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed;**

2.    Plaintiff's Motion for Summary Judgment (R. 12) be **denied;**

3.    Defendant's Motion for Summary Judgment (R. 13) be **granted;** and,

4.    Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to

another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 22nd day of August, 2016.



Signed By:

__*Candace J. Smith*__

**United States Magistrate Judge**

J:\DATA\social security\15-298 Donaldson R&R.final.wpd